IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Terra L. Page,                              :
                Plaintiff          :      Civil Action 2:12-cv-00205

      v.                             :      Judge Marbley

Michael J. Astrue,                          :      Magistrate Judge Abel
Commissioner of Social Security,
                Defendant          :

**REPORT AND RECOMMENDATION**

Plaintiff Terra L. Page brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income benefits.  This matter is before the Magistrate Judge for a report and recommendation on the administrative record and the parties' merits briefs.

**Summary of Issues.**  Plaintiff Page maintains that she has became disabled at age 24 by epilepsy, "bad" back, anxiety and depression.  (*PageID* 172.)  Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge failed to give treating physician, Dr. Turkewitz's opinion controlling weight.  Plaintiff alternatively seeks a remand under Sentence 6 of 42 U.S.C. §405(g) for administrative consideration of certain new and material evidence;

- The administrative law judge erred in concluding that plaintiff did not have a severe mental impairment;

- The administrative law judge failed to correctly assess plaintiff's credibility;

**Procedural History.** Plaintiff Page filed her application for supplemental security income on January 26, 2009, alleging that she became disabled on January 1, 2000, at age 24. (*PageID* 168-70.) The applications were denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On February 15, 2011, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified. (*PageID* 58-71.) A vocational expert also testified. (*PageID* 73-78.) On March 4, 2011, the administrative law judge issued a decision finding that Page was not disabled within the meaning of the Act. (*PageID* 87-102.) On January 11, 2012, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (*PageID* 49-52.)

**Age, Education, and Work Experience.** Page was born on January 30, 1975. (*PageID* 168, 174.) She has a high school education. (*PageID* 312, 414.) Page has no past relevant work. (*PageID* 100, 186-88.)

**Plaintiff's Testimony.** Plaintiff testified at the administrative hearing that she experienced her first seizure in August 2007. (*PageID* 58.) She reported that she did not have any warning when seizures occurred. (*PageID* 59.) When describing her seizures, plaintiff noted: "well, the big one, the grand mal seizures, I have a lot of convulsing; I bite my tongue a lot during those. I flop around a lot, so I get hurt a lot. I either get neck strain, I have a bloody tongue, I have blood coming from here to there in the head, and I have still knots that don't go away that, you know, where I've gotten

hurt from them." (*PageID* 61.)  Her other type of seizure she described as "staring seizures," she could not hear anything and "blanks out."  (*PageID* 62.)  These "staring episodes" occur once every two weeks and that they lasted 2 to 3 minutes.  (PageID 66.)  Plaintiff testified that her grand mal seizures occur once every four to six or seven weeks, but maybe twice in a week.  (*Id.*)  She indicated that after having a seizure she felt terrible, tired, worn out, confused, and scared.  (*PageID* 64.)  Plaintiff testified that it took about an hour to return to normal.  (*PageID* 65.)   Plaintiff testified that her physicians are adjusting/changing her medications to "see how that works."  (*PageID* 66-67.)  A new medication she was taking, Vimpat, caused her to experience bad headaches 1 to 2 times a week.  (*PageID* 68.)  She does not drive, swim or walk alone or ride a bike.  (*Id.*)

    **Medical Evidence of Record.**  The administrative law judge's decision fairly sets out the relevant medical evidence of record.  This Report and Recommendation will only briefly summarize that evidence.

    **Physical Impairments.**

    <u>Columbus Southern Medical Center.</u>  Plaintiff treated at the Columbus Southern Medical Center in January 2006 and she returned in May 2009.  (*PageID* 292-303.)  Plaintiff was treated for back pain and anxiety.

    <u>Adena Regional Medical Center.</u>  Plaintiff presented to the emergency room at Adena Regional Medical Center on August 14, 2007 for a seizure.  (*PageID* 249-52, 269-83.)  She stated that her family reported to her that she experienced rigid movements

and jerking while clutching her arms and curling her hands, and then fell to the floor and hit the front of her head.  (*PageID* 269.)  She awoke confused.  (*Id.*)  Urine drug screen was positive for marijuana.  (*Id.*)  Plaintiff was discharged and returned to the emergency room after having a subsequent episode.  (*Id.*)  While in the hospital, a CT scan of the maxillofacial (upper jawbone and face) area was taken which showed the possibility of a subtle, non-displaced nasal bone fracture of indeterminate age and could have represented a chronic finding.  (*PageID* 249.)  A CT scan of the head without contrast showed no acute intracranial abnormality.  (*PageID* 287.)  An MRI of the brain showed a mild degree of mucosal thickening of the ehtmoid sinuses bilaterally with no other abnormality seen.  (*PageID* 277.)  Plaintiff underwent awake and asleep EEGs which were both normal.  Dr. Li noted however that normal EEG do not exclude epilepsy.  (*PageID* 278-81.)  Plaintiff's discharge diagnoses were seizure disorder and fractured nose.  (*PageID* 283.)

An MRI of Page's lumbar spine taken in March 2009 showed "considerable" degenerative disc disease, end-plate degeneration and sclerosis at L5-Sl, with no evidence of significant spinal stenosis, neuroforaminal narrowing or obvious nerve root impingement.  (*PageID* 243.)

In December 2010, Page presented to the emergency room due to seizure activity.  (*PageID* 437-38.)  She reported that she had a seizure and fell and hit her head. (*Id.*)  While seen in the emergency room, a CT scan was performed which showed no acute intracranial abnormality.  (*PageID* 439.)  CT scan of the cervical spine showed no acute

4

abnormality.  (*PageID* 440.)  Her Dilantin level was 9.8. Dr. Turkewitz, his treating neurologist ordered that she take an additional 400 mg. of Dilantin at the ER, and he increased her Dilantin to 50 mg. a day. She was instructed to follow up with Dr. Turkewitz.  (*PageID* 438.)

Siyun Li, M.D.  Page initially saw Dr. Li on August 21, 2007 for follow-up of her two episodes of seizures.  (*PageID* 202-04.)  Dr. Li found that her seizures were consistent with generalized seizures and unprovoked.  (*PageID* 203.)  He prescribed Trileptal and advised her against driving for at least 3 months.  (*Id.*)

When seen on September 19, 2007, Page reported that she had one major seizure two days prior witnessed by her husband.  (*PageID* 233-34.)  Page complained of having frequent small seizures, describing them as shaking activity during her sleep.  (*Id.*)  She also complained of staring spells and stated that she would feel confused and bored after the events.  (*Id.*)  Dr. Li diagnosed Page with seizure disorder and noted that so far she had developed 3 major seizures described as convulsions.  (*PageID* 234.)

In November 4, 2008, Dr. Li noted that Page had one grand mal seizure in February 2008. She had not been compliant with her anticonvulsant medication until about July 2008. Page told Dr. Li that as long as she was taking Dilantin, she had no seizures.  (*PageID* 212-13.)  Dr. Li diagnosed Page with seizure disorder, staring spells of unknown etiology, and migraine headaches.  (*Id.*)  The following month, Page reported she experienced two episodes of seizures.  (*PageID* 210-11.)  Dr. Li diagnosed a seizure disorder that had not been well controlled with therapeutic phenytoin level.  He

believed that Page needed a different anti-convulsant.  Dr. Li reported that Page's seizures were usually associated with warnings and they most likely represented complex partial seizures with secondary generalization.  (*PageID* 211.)

Page reported in January 2009 that she developed side effects from taking carbamazepine and could not tolerate taking it.  (*PageID* 227-28.)  She had experienced two episodes of seizures since her last visit.  (*Id.*)  Dr. Li diagnosed Page with seizure disorder, epilectic versus nonepilectic and noted that these episodes all occurred after strong emotion confrontation and could be stress related.  (*PageID* 228.)  Dr. Li also noted that Page experienced staring spells of unknown etiology and migraine headaches, and advised her to get psychiatric counseling as soon as possible.  (*Id.*)  An EEG taken in February 2009 was normal.  (*PageID* 262-63.)

Page reported in May 2009 that she had another seizure like activity at a funeral home a few days prior that involved shaking activity for a few minutes and she lost consciousness.  (*PageID* 308-09.)  Dr. Li diagnosed her with seizure disorder, epilectic versus nonepilectic; migraine headaches; and anxiety, improved with Clonazepam.  (*Id.*)

Dr. Li prepared a narrative on June 19, 2009, reporting that Page began experiencing seizure activity during August 2007 and had been having intermittent seizures since the beginning of her seizure disorder.  Dr. Li indicated that Page's seizure disorder had been difficult to control due to lack of finances and lack of medical insurance coverage.  In order to get her seizure disorder under control, Page would need to have two or three anticonvulsants and she has difficulty affording those

medications.  Dr. Li also noted that Page had a medical history of anxiety and was currently being treated for that.  (*PageID* 290.)

William Bolz, M.D.  On September 11, 2009, Dr. Bolz, a state agency physician, conducted a physical residual functional capacity assessment based on Page's record. (*PageID* 316-23.)  Dr. Bolz found that Page retained the ability to occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk about six hours in an eight-hour workday, sit for about six hours in an eight-hour work day, and push or pull was unlimited.  (*PageID* 317.)  He found Page could never climb ladders, ropes, or scaffolds. (*PageID* 318.)  Page could not perform jobs involving even moderate exposure to workplace hazards such as unprotected heights, heavy machinery, and commercial driving.  (*PageID* 320.)  Dr. Bolz concluded that Page's symptoms were attributable to a medically determinable impairment.  (*PageID* 321.)  Dr. Bolz found Page's statements were only partially credible, noting that even though Page reported "many more seizures in the last 2+mo. but no ER visits and TS opines her seizures may be "non-epileptic" with poss. of stress relationship."  (*Id*.)

Jason Collins, M.D.  Page began treating with Dr. Collins for primary care in February 2010.  (*PageID* 364-72.)  Page reported that for approximately the last 4 years, she experienced bi-weekly staring seizures and grand mal seizures every 3-4 months. (*PageID* 367.)  Page complained of headaches and tremors associated with the seizures. (*PageID* 368.)  Dr. Collins' diagnosed backache NOS, seizure disorder, anxiety, and

tobacco use disorder.  (*PageID* 371.)  He referred Page to a local neurologist.  (*PageID* 352, 371.)

Praveen Giri, M.D.  Consulting neurologist, Dr. Giri saw Page on February 12, 2010 regarding her seizures.  (*PageID* 349-51.)  Page gave a history of seizures the past 4 years and indicated she currently had 3-4 generalized seizures a year and at least 1-3 spells of confusion a week since being on her current combination of Dilantin and Klonopin.  (*Id.*)  Dr. Giri noted Page gave a history suggesting complex partial seizures with secondary generalization as well as very obvious depression.  (*Id.*)

Lanny Jay Turkewitz, M.D.  Page initially saw Dr. Turkewitz, a neurologist, on June 25, 2010.  (*PageID* 383-85.)  He indicated that Page's history is clear for partial complex seizures with secondary generalization.  (*Id.*)  He ordered a Dilantin level along with other routine lab work, an MRI and EEG and prescribed Keppra.  (*PageID* 384.)  Page followed-up four days later and informed Dr. Turkewitz that Keppra made her nauseated and dizzy.  Dr. Turkewitz prescribed Vinput.  (*PageID* 382.)  Dr. Turkewitz ordered an EEG and MRI in July 2010, which were both normal.  (*PageID* 374-76.)  Page reported one seizure each month in July and August 2010.  (Page ID 378-80.) Dr. Turkewitz noted in October 2010 that Page seemed to be doing better but still was not seizure free.  (*PageID* 411.)  In November 2010, Dr. Turkewitz continued Page's prescription of Dilantin.  (*PageID* 410.)

Dr. Turkewitz completed a Seizures Residual Functional Capacity Questionnaire on December 23, 2010.  (*PageID* 393-97.)  He described Page's seizures as intractable and

noted that Page's seizures typically lasted for minutes. (*PageID* 393.)  He said that Page typically did not have the ability to take safety precautions and suffered from postictal manifestations of confusion and exhaustion. (*PageID* 394.) Dr. Turkewitz indicated that Page's seizures interfered with her daily activities "a great deal." (*PageID* 395.)  Dr. Turkewitz was also "not sure" if Page had a history of injury during seizures or had difficulty controlling her blood levels on medication, and he could not definitively state that Page had a history of fecal or urinary incontinence during seizure. (*Id*.)  He noted that Page was compliant with taking medication and that her seizures would likely disrupt co-workers; require additional supervision at work; and preclude the ability to work at heights, operate a motor vehicle, or work with power machines. (*PageID* 395-96.)  Nonetheless, when working she would not have to take unscheduled breaks. In response to a question asking whether the patient had any other associated mental problems, Dr. Turkewitz put a checkmark next to depression. He concluded that Page was capable of performing low stress jobs. (*PageID* 396.)  When asked to explain the reasons for his conclusion, Dr. Turkewitz simply stated that "[patient] is able." (*PageID* 397.)  Dr. Turkewitz was "not sure" how many work days per month that Page would miss because of her impairments or treatment. (*Id*.)

**Psychological Impairments.**

John S. Reece, Psy.D.  On August 20, 2009, Dr. Reece evaluated Page at the request of the Bureau of Disability Determination. (*PageID* 312-15.) Page reported no current social activities, she noted her hobby was playing cards with a recent decline in

her level of interest in socializing or leisure activities. (*PageID* 312.) Dr. Reece described

Page's affect as constricted and mood as mildly to moderately anxious/dysphoric with

some weeping. (*PageID* 313.) Page reported sleep disturbance, crying spells, depressed

mood, and recurrent thoughts of death but no current suicidal or homicidal thoughts.

(*PageID* 314.) Page indicated that she felt full of guilt, and worthless and sometimes

hopeless. (*Id.*) Page described her appetite as fine. She reported having crying spells

and getting depressed but no current suicidal ideation. Page said her energy level is

low and she had trouble falling asleep. Page exhibited no outward signs of anxiety.

Page stated she has had panic attacks about 2-3 times a year but none in the past 2

months. Dr. Reece diagnosed Page with depressive disorder not otherwise specified

and anxiety disorder not otherwise specified, and assigned her a current Global

Assessment of Functioning ("GAF") of 65. (*Id.*) He noted that her excessive anxiety and

worry caused significant distress in her social and occupational functioning. (*PageID*

315.) Dr. Reece opined that Page's ability to handle work stress was mildly impaired by

depression, anxiety, low self-esteem, excessive worry, and poor energy level, but Page

otherwise had no work-related mental impairments. (*Id.*)

Katherine Lewis, Psy.D. On September 16, 2009, Dr. Lewis, a psychologist,

completed a psychiatric review technique and mental residual functional capacity

assessment. (*PageID* 324-57.) Dr. Lewis concluded that Page had mild restriction of

activities of daily living, no difficulties in maintaining social functioning, mild

difficulties in maintaining concentration, persistence or pace, and no episodes of

decompensation.  (*PageID* 334.)  Page further determined that the evidence did not establish the presence of the "C" criteria.  (*PageID* 335.)   In a narrative assessment of Page's ability to engage in work-related activities from a mental standpoint, Dr. Lewis found that Page did not have a severe mental impairment.  (*PageID* 336.)

Scioto Paint Valley Mental Health Center.  Page was initially assessed at the Scioto Paint Valley Mental Health Center on August 4, 2010.  (*PageID* 413-18.)  She reported feeling depressed and anxious.  Her father had died two months before. She had lost her home the same week and was now living in the windowless basement of her in-laws' home. There was friction between her and her in-laws. Her husband had been laid off work earlier the week of her first visit to Scioto Paint Valley. (*PageID* 413.) Page  reported physical abuse, domestic abuse, and sexual abuse, apparently in an earlier marriage. As a child she had one psychiatric hospitalization. Page also reported that she had panic attacks. Further, when she got overwhelmed with stress she would have a seizure.  (*PageID* 416.)  Page said she felt like everything was caving in on her. She also experienced frustration about her seizures. On bad days they prevented her from driving. (PageID 417.) Although the intake form asked for information concerning drug use, including use of marijuana, Page did not fill in that part of the form. Following a mental status examination,  Page was diagnosed with adjustment disorder with mixed anxiety and depressed mood rule out depressive disorder.  Page was assigned a GAF of 51.  (*PageID* 418.)  Individual counseling was recommended.  (*PageID* 417.)  The record shows two additional dates of treatment, September 29, 2010 and

11

October 20, 2010, Page discussed her living situation and depression, which she described on the first of those visits as worsening.  On the last visit, the counselor helped Page contact Home for Hopes to see if she and her husband qualified so they could move out of her in-laws' basement.(*PageID* 422-23.)

        Appeal Council Documents/Leon Rosenberg, M.D.  The first Progress Notes from Dr. Rosenberg, a neurologist, are dated April 14, 2011.  (*PageID* 453-56.)  They state this was a return visit. Oh her last visit, five months before, Page was "doing well and no changes were made to the medication regimen. On the April 14 visit, she complained of marked anxiety and depressions, as well as worsening headaches. (PageID 452.) Her most recent seizure episode was two days prior with no precipitating factors.  (*Id*.)  Dr. Rosenberg assessment was complex partial seizure with secondary generalization, intractable generalized major motor seizures, generalized anxiety disorder, and depression.  He stressed with Page the need for compliance with prescribed medicines and instructed her not to drive until further notice. She was to return in a month. (PageID 455) Dr. Rosenberg discussed safety issues with frequent seizures and told Page "she is currently totally disabled for any work." (PageID 456.)

        Gretchen Horner, CNP completed a Seizures Residual Functional Capacity questionnaire on May 16, 2011.  (*PageID* 447-51.)  Dr. Rosenberg signed this questionnaire on August 31, 2011.  (*PageID* 451.)  CNP Horner reported she began treating Page on June 25, 2010 and saw her every one to 3 months.  Page's diagnoses were listed as complete partial seizures with secondary generalization, generalized

major motor seizures, and anxiety and depression.  (*PageID* 447.)  CNP Horner opined

that Page's seizures were both generalized and localized, and there was a loss of

consciousness. (*Id.*)  Page's partial seizures occurred one to two times per week and her

generalized motor seizures occurred one to two times per month.  (*Id.*)

CNP Horner noted that Page did not always have a warning of an impending

seizures and her seizures did not occur at any particular time of day.  (*PageID* 448.)

CNP Horner checked off that someone must put something soft under her head, loosen

her tight clothing, clear the area of hard of sharp objects, and, after the seizure, turn

Page on her side to allow saliva to drain from her mouth.  (*Id.*)  CNP Horner noted that

Page's postictal manifestations would include confusion, severe headache, exhaustion,

muscle strain, and irritability.  (*Id.*)  She did not know how long Page's postictal

manifestations would last.  (*Id.*)  CNP Horner indicated that Page had a history of fecal

and/or urinary incontinence during the seizure.  (*PageID* 449. )  CNP Horner opined

that Page's seizures were likely to disrupt the work of her coworkers and that she

would need more supervision at work than an unimpaired worker.  (*PageID* 450.)  She

reported that Page should not work with power machines that require an alert operator.

(*Id.*)  CNP Horner also reported that Page would need to take unscheduled breaks of 15-

45 minutes 1 to 2 times per week.  (*Id.*)   CNP Horner opined that stress increased Page's

seizure frequency and she did have "good" and "bad" days.  (*PageID* 451.)  She noted

that Page would need to avoid stress, deadlines, climbing, heights or ladders, and

driving.  (*Id.*)  CNP Horner estimated that Page would be absent four or more times per

month.  (*Id.*)

> **Administrative Law Judge's Findings.**  The administrative law judge found

that:

1. Based on the claimant's earnings record, the claimant has not engaged in SGA since January 26, 2009, the application date (20 CFR 416.971 *et seq.*).

2. Based on the objective medical evidence, the claimant has the following severe impairments: degenerative disc disease of the lumbar spine and a complex partial seizure disorder (20 CFR 416.920(c)).

3. Based on the objective medical evidence, the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, it is determined that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) subject to the following: (1) the claimant is able to lift, carry, push and pull up to 50 pounds occasionally and up to 25 pounds frequently: (2) the claimant is able to sit, stand and walk for up to 6 hours each in an 8-hour workday: and (3) the claimant is unable to climb ladders, ropes and scaffolds and unable to perform work activity requiring exposure to hazards such as moving machinery or unprotected heights.

5. Based on the claimant's earnings record, the claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on January 30, 1975 and was 33 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964)

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. Because there are jobs that exist in significant numbers in the national economy that the claimant can perform, the claimant has not been under a disability, as defied in the Social Security Act, since January 26, 2009, the date the application was filed (20 CFR 416.920(g)).

(*PageID* 89-102, citation to record omitted.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id.  LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

15

**Plaintiff's Arguments.** Page argues that the decision of the Commissioner denying benefits should be reversed because:

- <u>The administrative law judge failed to give Dr. Turkewitz's opinion controlling weight.</u> (Doc. No. 13 at *PageID* 470.) Page argues that the administrative law judge fell short of recognizing the applicability of the 20 C.F.R. §416.927(d)(2) guidelines and failed to provide a supported explanation as to why the reports and conclusions of Dr. Turkewitz, a neurologist, coupled with her testimony and the record as a whole, were not adopted or granted deference or at least any credibility with regard to the severity of her impairments. (*Id.*) Page also argues that Dr. Turkewitz's opinion is consistent with the August 2011 opinion of Dr. Rosenberg, a neurologist. Dr. Rosenberg's opinion would warrant a sixth sentence remand under 42 U.S.C.S. § 405(g). (*Id.* at *PageID* 473.)

- <u>The administrative law judge erred in concluding that plaintiff did not have a severe mental impairment</u>. Page argues that the GAF score assigned by the examining psychologist, Dr. Reece underestimates the severity of her mental impairments. (*Id.* at *PageID* 475.) In addition, Page contends that the numerous references to depression and anxiety in the claim file reflect an impairment that is "severe" and perhaps even disabling in and of itself.

- <u>The administrative law judge failed to correctly assess the plaintiff's credibility</u>. Page argues that the administrative law judge failed to conduct the

proper credibility analysis and failed to make the proper findings pursuant to Social Security Ruling[1] (SSR) 96-7p.

**Analysis.**

Treating physician.  Page first maintains that the administrative law judge erred in rejecting the opinions of Dr. Turkewitz, one of her treating neurologist, who had assessed Page's residual functional capacity related to her seizure activity.  Within this contention of error, Page also indicates that the August 2011 opinion of Dr. Rosenberg, also a neurologist, supports the opinion of Dr. Turkewitz.  According to Page, Dr. Rosenberg's opinion would warrant a sixth sentence remand under 42 U.S.C.S. § 405(g).

The treating physician rule, when applicable, requires the administrative law judge to place controlling weight on a treating physician's or treating psychologist's opinion rather than favoring the opinion of a nonexamining medical advisor or a one-time examining physician or psychologist or a medical advisor who testified before the administrative law judge.  *Blakley v. Comm'r. of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009); *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  The administrative law judge 'will' give a treating source opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques

---

[1]"Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273, n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).  Social Security Rulings have been assumed to be binding on the Commissioner in the same way as Social Security Regulations. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004); *Ferguson*, 628 F.3d at 273, n.1.  In this case, the Court makes the same assumption regarding Social Security Ruling 02-1p.

and is not inconsistent with the other substantial evidence in your case record.  *Cole v. Commissioner of Social Security*, 652 F.3d 653, 659 (6th Cir. 2011).  Furthermore, the Commissioner's regulations provide that he will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."  20 C.F.R. § 416.927(d)(1).  When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  20 C.F.R. § 416.927(d)(2).  In determining the weight to assign a treating source's opinion, the Commissioner considers the length of the relationship and frequency of examination; nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision.  (*Id.*)

There is a rebuttable presumption that a treating physician's opinion is entitled to great deference.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). However, for the treating physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis."  *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). The Commissioner may reject the treating doctor's opinions when "good reasons are

identified for not accepting them."  *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); 20

C.F.R. § 416.927(d)(2)("We will always give good reasons in our notice of determination

or decision for the weight we give your treating source's opinion"); *Wilson*, 378 F.3d at

544 (6th Cir. 2004).

In formulating Page's physical residual functional capacity, the administrative

law judge adopted the assessment of the state agency physician, Dr. Bolz.  (*PageID* 98.)

Plaintiff argues the administrative law judge cannot rely on the opinions of reviewing

physicians to justify her residual functional capacity assessment, when they "ignored

the non-exertional impairments that Ms. Page has due to her seizures."  (Doc. 13 at

*PageID* 474.)  However, the opinions of non-examining state agency medical consultants

have some value and can, under some circumstances, be given significant weight.  This

occurs because the Commissioner views nonexamining sources "as highly qualified

physicians and psychologists who are experts in the evaluation of the medical issues in

disability claims under the [Social Security] Act."  Social Security Ruling 96-6p.

Consequently, opinions of one-time record-reviewing physicians are weighed under the

same factors as treating physicians including supportability, consistency, and

specialization.  *See* 20 C.F.R. §416.972(d), (f).  Dr. Bolz specifically restricted Page to

avoid even moderate exposure to work hazards and she could never climb ladders,

ropes, or scaffolds to account for her seizures.  *See PageID* 318, 320.

In discussing Dr. Turkewitz's opinion, the administrative law judge noted:

> The BDD assessment is consistent with the other opinion evidence in this case, which, notably, does not conclude that the claimant is unable to work due to her medically determinable impairments (Exhibit 9F at p. 1 and Exhibit 22F at pp. 2-5).  The evidence received into the record after the reconsideration determination concerning the claimant's physical status did not provide any credible or objectively supported new and material information that would alter the BDD's findings concerning the claimant's physical limitations.

(*PageID* 98.)  Plaintiff contends that, "The administrative law judge makes no mention of Dr. Turkewitz's opinion or a determination as to whether Dr. Turkewitz's opinion is entitled to great weight as a treating physician."  *See* Doc. 13 at *PageID* 471.  Although the administrative law judge does not mention Dr. Turkewitz by name, a review of the decision, clearly shows that the administrative law judge followed 20 CFR 416.927 and properly did not accept Dr. Turkewitz's opinion.  *See PageID* 98.

Dr. Turkewitz's opinion contains no rationale for the conclusions reached.  For example,  Dr. Turkewitz simply stated that "[patient] is able."  (*PageID* 397.)  Dr. Turkewitz also reported that the average frequency of Page's seizures "varies greatly" but could not provide the dates of Page's recent seizures.  (*PageID* 393.)  Dr. Turkewitz was also "not sure" if Plaintiff had a history of injury during seizures or had difficulty controlling her blood levels on medication, and he could not definitively state that Plaintiff had a history of fecal or urinary incontinence during seizure.  (*PageID* 395.)  Dr. Turkewitz again was "not sure" how many work days per month that Plaintiff would miss because of her impairments or treatment.  (*PageID* 397.)

<u>Remand Pursuant to Sentence Six</u>.  When the Appeals Council denies a claimant's request for review, the decision of the administrative law judge becomes the final decision of the Commissioner.  *Casey v. Secy. of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).  This Court reviews the administrative law judge's decision, not that of the Appeals Council denying the request for review.  *Id*.  Consequently, only evidence of record before the administrative law judge may be considered by the District Court in reviewing the final decision of the Commissioner of Social Security denying benefits.  *Cline v. Comm'r of Social Security*, 96 F.3d 146, 148-49 (6th Cir. 1996). A claimant may seek remand so that the evidence presented to the Appeals Council can be considered by the administrative law judge.  *Id.*; *Gartman v. Apfel*, 220 F.3d 918, 922 (8th Cir. 2000).

Section 405(g), sentence six, provides, in relevant part:

> The court may . . . at any time order additional evidence to be taken before the [Commissioner], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

The evidence supporting a motion to remand must be both new and material. *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996). Evidence is "new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.' *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990)." *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001). It is material "only if there is 'a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if

21

presented with the new evidence.' *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 711 (6th Cir. 1988)." *Id.* Good cause is shown by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the administrative law judge. *Willis v. Secretary of Health & Human Services,* 727 F.2d 551, 554 (1984)(per curiam). *Id.* Merely cumulative evidence does not establish good cause for a remand. *Borman v. Heckler,* 706 F.2d 564, 568 (6th Cir. 1983); *Carroll v. Califano,* 619 F.2d 1157, 1162 (6th Cir. 1980).  The plaintiff has the burden of establishing that the evidence is new and material and that there is good cause for not having presented the evidence to the Administrative Law Judge.  *Id.*, citing, *Oliver v. Secretary of Health & Human Services,* 804 F.2d 964, 966 (6th Cir. 1986).

Plaintiff seeks remand based on the Seizures Residual Functional Capacity questionnaire completed by Gretchen Horner, CNP on May 16, 2011 and signed by Dr. Rosenberg on August 31, 2011.  (*PageID* 447-51.)  According to plaintiff, the responses to this questionnaire are consistent with and support the opinion of Dr. Turkewitz.  (Doc. 13 at *PageID* 472.)  Plaintiff argues that Dr. Rosenberg did not start treating Page until April 14, 2011, after the hearing has already taken place.  Furthermore, according to Page, this report continued to corroborate Dr. Turkewitz's opinion and shows that her seizures are disabling.

Here, the newly submitted evidence is not material because it is unlikely that the administrative law judge would have reached a different disposition of the disability claim if presented with this evidence.  Even though plaintiff argues that Dr. Rosenberg

22

did not begin treating Plaintiff until after the administrative law judge's decision, it is insignificant because plaintiff fails to acknowledge that CNP Horner, and not Dr. Rosenberg completed this opinion.  CNP Horner noted that she began treating Page in June 2010 and Page has failed to show good cause for her failure to submit the opinion prior to the administrative law judge's decision.  Plaintiff has failed to demonstrate good cause for failing to present this evidence to the administrative law judge.  Plaintiff has not provided any explanation for why this evidence could not have been obtained prior to the hearing.

<u>Credibility.</u>

Plaintiff's next claim of error finds fault with the administrative law judge's conclusion that her testimony was not entirely credible.  Specifically, Page claims that the administrative law judge failed to consider the factors listed in Social Security Ruling 96-7p.  Plaintiff alleges that the administrative law judge incorrectly noted that Page's allegations of disability due to her seizure disorder were not consistent with objective medical evidence which did not document epilepsy.  Plaintiff argues she has never alleged that she suffers from epilepsy.  Page further notes the administrative law judge incorrectly found she was not compliant with her medication and that her alleged seizure disorder was concurrent with her abuse of marijuana.  (Doc. No. 12 at *PageID* 477-79.)

An administrative law judge "is not required to accept a claimant's subjective complaints and may consider the credibility of a claimant when making a

23

determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 469, 476 (6th Cir.

2003), citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  An

administrative law judge's credibility determinations about a claimant are to be given

great weight.  However, they must also be supported by substantial evidence.  *Cruse v.

Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). "Discounting credibility to a certain

degree is appropriate where an administrative law judge finds contradictions among

medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531,

citing *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988).

In the instant case, the record is replete with objective medical evidence

indicating that plaintiff had medically determinable impairments.  The administrative

law judge acknowledged these impairments, and further recognizes that these

impairments "could reasonably be expected to produce [plaintiff's] pain or other

symptoms."  (*PageID* 96.)  The administrative law judge determined, however, that after

considering the intensity, persistence, and limiting effect of Page's impairments, she

was capable of medium exertional work.  (*Id*.)  In making this credibility determination,

the administrative law judge properly relied on the record evidence, including objective

medical findings and plaintiff's own statements about her daily activities.  *See* 20 C.F.R.

§ 416.929(c)(2) (objective medical findings are useful in assessing the intensity and

persistence of a claimant's symptoms) and 20 C.F.R. § 416.929(c)(3)(i) (daily activities

may be useful to assess nature and severity of claimant's symptoms).

As to the three points plaintiff makes above, the administrative law judge

determined that Page's seizure disorder was not documented by objective evidence,

> MRI results of the claimant's brain from August 2007 were normal
> (Exhibit 8F at p. 30).  CT imaging results of the claimant's head from
> August 2007 were also normal (Exhibit 8F at pp. 40-42).  Awake and
> asleep EEG results from August 2007 were bot h normal (Exhibit 8F at pp.
> 31-34).  A treatment note from January 2009 reports that recent awake and
> asleep EEG results were also each normal (Exhibit 4F at p. 2).  A February
> 2009 EEG was normal (Exhibit 8F at p. 15). EEG and MRI results from July
> 2010 were also both normal (Exhibit 20F at pp. 2- 4).  The claimant
> repeatedly demonstrated normal coordination, cognition, speech, cerebral
> functioning and intact recent and remote memories (Exhibit IF at p. 2,
> Exhibit 2F at pp. 2 and 4, Exhibit 4F at pp. 2 and 8, Exhibit 8F at pp. 26-27,
> Exhibit 11F at p. 5, Exhibit l6F at pp. 2-3, Exhibit 26F at pp. 3-4 and Exhibit
> 29F at p. 4).

(*PageID* 97.)  20 C.F.R. § 416.929(b) (objective medical evidence is a useful indicator in

assessing severity of alleged symptoms).

The administrative law judge also found the medical evidence showed Page's

seizures responded well to prescribed medication.  *PageID* 97, citing to *PageID* 212.  The

administrative law judge also noted the evidence documents that Plaintiff was not

always fully compliant with prescribed treatment for her alleged seizures.  (*Id.* citing to

*PageID* 212, 381.)  Finally, the administrative law judge noted that some of Page's

alleged seizure episodes are also concurrent with the her abuse of marijuana.  When

plaintiff presented to the emergency room at Adena Regional Medical Center on

August 14, 2007 for a seizure, her urine drug screen was positive for marijuana.  (*PageID*

249-52, 269-83.)  Her husband also reported that she abused marijuana for many years.

(*Id.*)

Further, the administrative law judge found that plaintiff's statements regarding her varied activities contradict her allegations concerning the intensity, duration, and limiting effects of her symptoms. (*PageID* 98.) The administrative law judge noted that plaintiff stated that she visits her mother and sister on a daily basis (*PageID* 91, citing to *PageID* 314, 417). Plaintiff reported she is able to take care of personal grooming, is able to perform household, cleaning and chores and reportedly spends her day doing light housework. (*PageID* 90, citing to *PageID* 314.) The administrative law judge also found that plaintiff can perform yard work, including pulling weeds and watering plants, shops in stores with her husband, is able to perform money management activities such as paying bills, counting change, handling a savings account and using a checkbook and money orders independently and without difficulty, and is able to use public transportation without difficulty. (*PageID* 90.) It was not improper for the administrative law judge to consider Plaintiff's ability to engage in activities of daily living in assessing the credibility of his claims to be unable to work. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004), citing *Walters*, 127 F.3d at 532.

Based upon the foregoing, the undersigned finds that the administrative law judge's assessment of plaintiff's credibility was based on consideration of the entire record and is supported by substantial evidence. Accordingly, applying the applicable deferential standard of review, the undersigned concludes that the administrative law judge's credibility determination was not erroneous.

<u>Severe Mental Impairment</u>

26

Page contends that the administrative law judge erred in finding that she did not suffer from severe disabling mental impairments.  Plaintiff argues that references to depression and anxiety in the claim file reflect an impairment that is "severe" and perhaps even disabling in and of itself.  *See* Doc. 13 at *PageID* 477.  In addition, Page contends that the GAF score of 65 assigned by the consulting psychologist, Dr. Reece underestimated the severity of Page's mental impairments.

Step 2 of the sequential analysis – determining whether the claimant has a severe impairment – creates "a *de minimis* hurdle in the disability determination process.... Under the ... *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."  *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).  The purpose of this very low evidentiary hurdle is to "screen out claims that are 'totally groundless.'"  *Higgs*, 880 F.2d at 862 (quoting in part *Farris v. Secretary of Health and Human Services*, 773 F.2d 85, 89-90 (6th Cir. 1985)).  The *Higgs* Court characterized the dismissal of a disability claim at Step 2 based on medical evidence alone as "exceptional."  880 F.2d at 863.

The administrative law judge's decision contains almost 5 pages wherein he addresses Page's depression and anxiety.  *See PageID* 90-94.  Although Page argues that she has a "severe" mental impairment, there is no evidence in the record to substantiate her claims.  Page did not seek therapy or was treated by a psychiatrist or psychologist until August 2010.  As the administrative law judge notes, the absence of psychological counseling would not be expected if the claimant's medically determinable mental

impairments were "severe" within the meaning of the Regulations.  (*PageID* 93.) Furthermore, Dr. Lewis found that Plaintiff did not have a severe mental impairment. (*PageID* 336.) The administrative law judge also noted that Dr. Reece found that Plaintiff's ability to handle work stress was only mildly impaired but Plaintiff otherwise had no work-related mental impairments.  (*PageID* 315.)  The undersigned concludes that the administrative law judge's failure to find Page's depression an additional severe impairment at step two is not reversible error.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.  It is FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

 s/Mark R. Abel             
United States Magistrate Judge
